# NOS. 12-08-00364-CR
# 12-08-00365-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT RAY KASSUBE,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Robert Ray Kassube appeals his convictions for possession of a controlled substance with intent to deliver (trial court number 241-0465-08) and manslaughter (trial court number 241-0580-08). In two issues, Appellant argues that the trial court violated a charge bargain in both cases and that the trial court improperly assessed restitution in the possession case. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of a controlled substance with intent to deliver and manslaughter. Subject to a charge bargain, Appellant pleaded guilty to both offenses. After finding Appellant guilty of both offenses, the trial court sentenced him to imprisonment for life in the possession case and imprisonment for twenty years in the manslaughter case. The court also assessed a $10,000 fine and restitution in each case. These appeals followed.

## CONSIDERATION OF UNADJUDICATED OFFENSES

In his first issue, Appellant asserts that the trial court erred by failing to follow the terms of the charge bargain between Appellant and the State. Specifically, Appellant alleges the charge bargain in question called for the trial court to consider three additional unadjudicated offenses when assessing punishment in the manslaughter case, but not in the possession case.[1] *See* TEX. PENAL CODE ANN. § 12.45 (Vernon 2003). Appellant argues that the trial court violated this agreement by considering the offenses when assessing punishment in both cases.

## Applicable Law

The two basic kinds of plea bargaining in the United States are charge bargaining and sentence bargaining.[2] *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003); *see* BLACK'S LAW DICTIONARY 1270 (9th ed. 2009). Charge bargaining involves questions of whether a defendant will plead guilty to the offense that has been alleged or to a lesser or related offense, and of whether the prosecutor will dismiss, or refrain from bringing, other charges. *Shankle*, 119 S.W.3d at 813; *see* BLACK'S LAW DICTIONARY 1270. Sentence bargaining may be for binding or nonbinding recommendations to the court on sentences, including a recommended "cap" on sentencing or a recommendation for deferred adjudication probation. *Shankle*, 119 S.W.3d at 813; *see* BLACK'S LAW DICTIONARY 1270. "There can be other kinds of plea bargains that include other considerations, but they are far fewer in number." *Shankle*, 119 S.W.3d at 813; *see State v. Moore*, 240 S.W.3d 248, 250-51 (Tex. Crim. App. 2007) (discussing the wide range of possible plea bargain provisions and the freedom of parties to make creative agreements).

The Texas Code of Criminal Procedure provides that before the trial court accepts a plea of guilty or nolo contendere from a defendant, it shall inquire as to the existence of a plea bargain agreement. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2) (Vernon 2009). The Code further mandates that the court "shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea." *Id.* "[W]hen a defendant enters a plea of guilty

---

[1] Unlike the manslaughter case, the maximum potential sentence in the possession case was life imprisonment. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2003) *with* TEX. PENAL CODE ANN. § 19.04 (Vernon 2003).

[2] Both charge bargains and sentence bargains can result in a "plea bargain case" as defined by rule 25.2(a)(2) of the Texas Rules of Appellate Procedure. *Shankle v. State*, 119 S.W.3d 808, 812-14 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 25.2(a)(2).

or nolo contendere pursuant to a plea bargain agreement with the prosecutor, and the plea is accepted and the agreement is approved by the trial judge, the defendant is entitled to specific enforcement if the agreement can be enforced, or, if not enforceable, is entitled to withdraw his plea." ***Perkins v. Court of Appeals***, 738 S.W.2d 276, 283 (Tex. Crim. App. 1987).

**Discussion**

Appellant's plea hearing was on July 25, 2008. At that hearing, the trial court was presented with a document in each case entitled "Agreed Punishment Recommendation." The documents were signed by Appellant, defense counsel, and an assistant district attorney. In both cases, it was agreed that any prison sentences would run concurrently. The recommendation in each case also noted that an "OPEN PLEA" was "mutually recommended."[3] In the manslaughter case, the recommendation included the following provision:

> 6. (  )  Pursuant to PC Article 12.45, the Court can consider the following unadjudicated
> offenses:   C/N 241-0579-08 PCS w/Intent;   241-0582[-]08 Endangering a child
> and C/N 241-0581-08 PCS w/Intent.

No such language was included in the recommendation for the possession case.

Appellant argues that the absence of any mention of the unadjudicated offenses on the recommendation for the possession case demonstrates that the State and Appellant had agreed to have these offenses considered by the trial court only when assessing punishment in the manslaughter case. However, the parties failed to check mark provision 6 on the manslaughter recommendation. Provisions 3 and 8 of the manslaughter plea agreement contained a

---

[3] The term "open plea" is an imprecise legal term of art. In some instances, it has been defined to involve a plea where charge bargaining, but not sentence bargaining, has occurred. *See, e.g., **Moore***, 240 S.W.3d at 254 ("The parties used the term 'open plea' at the plea bargain hearing, essentially acknowledging that the guilty plea would become open as to sentencing implications."); ***Hargrove v. State***, No. 05-96-01669-CR, 1999 WL 243473, at *2 (Tex. App.—Dallas Apr. 27, 1999, no pet.) (not designated for publication) ("The [trial] court stated, 'An open plea means there is no agreement as to punishment.'"). In other instances, it has been defined to involve a plea where no plea bargaining of any kind has occurred. *See, e.g., **Brumit v. State***, 206 S.W.3d 639, 641 (Tex. Crim. App. 2006) ("The [trial] [c]ourt:   Do you understand an open plea to the Court means there is no plea agreement between you and your attorney and the State's attorney?"); ***Beasley v. State***, No. 05-97-01374-CR, 1999 WL 42045, at *1 (Tex. App.—Dallas Feb. 2, 1999, no pet.) (not designated for publication) ("Further, at the plea hearing, the magistrate stated, '[T]his is an open plea . . . which means there is no plea bargain agreement.'"). Black's Law Dictionary contains no listing for the term "open plea." However, Black's defines a "blind plea" as "[a] guilty plea made without the promise of a concession from either the judge or the prosecutor." BLACK'S LAW DICTIONARY 1268.

3

recommendation as to restitution and a designation of Appellant's plea as an "open plea." The parties had check marked both of these provisions. Further, this document provided that "**ANY CHANGES, ADDITIONS OR ALTERATIONS TO THE ORIGINAL CONTENT OF THIS DOCUMENT MUST BE INITIALED AND DATED BY ALL PARTIES TO THE CHANGES, ADDITIONS, OR ALTERATIONS FOR THEM TO BE VALID.**"

At the plea hearing, perhaps because the parties had failed to check mark provision 6, the trial court asked if it would be considering the three offenses when assessing punishment in the manslaughter case. Both parties stated, "That's correct." The possession case was not addressed. At the sentencing hearing, when discussing the plea agreement regarding the two cases, the trial court inquired if the three unadjudicated offenses were "under 12.45." Appellant and the State agreed, without any qualifications, that they were. Further, during the trial court's oral pronouncement of sentence in the possession case, Appellant requested that the three unadjudicated offenses be considered.[4] The trial court later stated on the record that it had considered the unadjudicated offenses in both cases. No objection was made by either party. The record does not contain any evidence as to whether this alleged deviation from the plea agreement was intended by the trial court or either party.

The written recommendations, by themselves, evince that the agreement between the parties did not include consideration of the unadjudicated offenses when assessing punishment in the possession case. However, in order to preserve error for appellate review, it was incumbent upon Appellant to bring to the trial court's attention any failure by the trial court to follow the plea agreement. *See* TEX. R. APP. P. 33.1 (setting forth the general rule for error preservation); *see also Martinez v. State*, 159 S.W.3d 655, 656 (Tex. App.–Corpus Christi 2004, no pet.) (requiring error preservation under rule 33.1); *Ballard v. State*, 149 S.W.3d 693, 695-96 (Tex. App.–Austin 2004, pet. ref'd) (same). *But compare Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971) ("Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."), *with Marin v. State*, 851 S.W.2d 275, 278-280 (Tex. Crim. App. 1993) (explaining that some rights are not subject to

---

[4] Counsel for Appellant was unable to finish his sentence, and it is unclear whether he intended his request to be that the trial court consider the unadjudicated offenses for the manslaughter case only.

forfeiture or procedural default by simple inaction). Because Appellant failed to do so, his issue is not preserved for Appellant review. *See* TEX. R. APP. P. 33.1; *Martinez*, 159 S.W.3d at 656; *Ballard*, 149 S.W.3d at 695-96. We overrule Appellant's first issue.

## RESTITUTION

In his second issue, Appellant argues that the trial court's assessment of restitution in the possession case was improper because it assessed restitution payable to the Texas Department of Public Safety (DPS). According to Appellant, the trial court lacked the legal authority to assess restitution to an entity that was not a victim of the charged offense. In addition, Appellant argues that the trial court's restitution assessment lacks any evidentiary basis in the record.

As part of the plea agreement in the possession case, the parties agreed to "payment of RESTITUTION in the amount to be determined by the [presentence investigation report]." This agreement also indicated that the restitution was related to a "lab fee" and referenced the number "140." This agreement was presented to the trial court at the plea hearing.

The presentence investigation report indicated that the DPS's crime laboratory had incurred $140.00 in costs in relation to its analysis of the controlled substances seized in the case. This matched the information set forth in the plea agreement. In accord with the wishes of both parties and the evidence before it, the trial court stated at the sentencing hearing that "[r]estitution is ordered to DPS in the amount indicated to be due with a lab fee analysis in the presentence." The trial court's judgment includes a restitution assessment of $140.00 to the DPS.

At no point did Appellant raise in the trial court any legal or factual ground in opposition to the restitution assessment. Instead, the record shows that the trial court assessed restitution in Appellant's possession case in response to the plea agreement entered into by Appellant. In light of these circumstances, we hold that by failing to complain of the trial court's assessment of restitution, Appellant failed to preserve for appellate review his argument that the trial court lacked the legal authority to assess restitution to the DPS. *See Idowu v. State*, 73 S.W.3d 918, 921 (Tex. Crim. App. 2002); *Lemos v. State*, 27 S.W.3d 42, 46-47 (Tex. App.–San Antonio 2000, pet. ref'd); *see also* TEX. R. APP. P. 33.1. Further, by expressly requesting that the trial court assess the aforementioned restitution to the DPS, Appellant waived his right to complain that such an assessment lacked the necessary evidentiary support. *See Campbell v. State*, 5 S.W.3d 693,

5

700-02 (Tex. Crim. App. 1999) (parties may agree to waive due process rights regarding restitution); *see also Moore*, 240 S.W.3d at 251 (court of criminal appeals will not interfere with plea agreement terms "unless they appear to be manifestly unjust."); *Marin*, 851 S.W.2d at 278-280 (explaining that some matters may be expressly waived). *But see Ex parte Sims*, 868 S.W.2d 803, 804 (Tex. Crim. App. 1993) (an absolute requirement or prohibition may not be lawfully avoided, even by express consent). We overrule Appellant's second issue.

## DISPOSITION

We *affirm* the judgments of the trial court. All pending motions are overruled as moot.

**BRIAN HOYLE**
Justice

Opinion delivered February 26, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

6