**Opinion issued November 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00825-CR

_____

**BRANDON ONEAL ANDREWS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 21st District Court
Washington County, Texas
Trial Court Case No. 17,670

## MEMORANDUM OPINION

Appellant, Brandon Oneal Andrews, pleaded guilty, with an agreed punishment recommendation from the State, to the felony offense of forgery of a financial instrument committed against an elderly individual.[1]  In accordance with

---

[1]     *See* TEX. PENAL CODE ANN. § 32.21(b), (e-2); *see also id.* § 22.04(c)(2).

the plea agreement, the trial court assessed appellant's punishment at confinement for ten years, suspended the sentence, placed him on community supervision for six years, and assessed a fine of $1,500. The State, alleging numerous violations of the conditions of his community supervision, then moved to revoke appellant's community supervision. After appellant pleaded true to the allegations in the State's motion, the trial court revoked appellant's community supervision and assessed his punishment at confinement for eight years and a fine of $1,500. In two issues, appellant contends that the trial court and the State violated his due process rights.

We affirm.

## Background

On June 16, 2016, appellant, with an agreed punishment recommendation from the State, pleaded guilty to the felony offense of forgery of a financial instrument committed against an elderly individual. In accordance with the plea agreement, the trial court assessed appellant's punishment at confinement for ten years, suspended the sentence and placed him on community supervision for six years.[2] Appellant's community supervision was subject to certain conditions, including that he:

---

[2] The trial court also assessed a fine of $1,500.

1. Commit no offense against the laws of the State of Texas or any State or the United States or any governmental entity;

2. Avoid injurious or vicious habits: including but not limited to: abstain from the use of narcotics or drugs in any form at any time: abstain from the use of alcohol in any form at any time or any substance capable of or calculated to cause intoxication and never become intoxicated;

4. Report to the Community Supervision and Corrections Officer ("CSO") of the Court in person, today, daily, weekly, or monthly as directed by the CSO;

8. Remain within Washington County, Texas, unless permitted to depart by this Court and/or its CSO;

10. Pay [a] fine, if one be assessed, and the costs of Court, in one or several sums, and make restitution or reparation in any sum that the Court shall determine to-wit:

   $1,500.00 Fine;
   $283.00 Court Costs;
   $400.00 Court Appointed Attorney Fee;
   $50.00 Crime Stoppers Fee;
   $75.00 Check Collection Fee;

   Totaling $2308.00 payable in payments of $43.00 per month beginning July 10, 2016 to the Community Supervision and Corrections Department of Washington County and continuing no later than the 10th of each month until paid in full;

11. Pay $60.00 a month supervision fee by cashier's check or money order to the Washington County Community Supervision and Corrections Department on or before the 10th day of each month beginning July 10, 2016;

17. Perform 200 hours of Community Service at a rate of no less than 10 hours per month beginning July 1, 2016 and continuing each month thereafter. All community service hours are to be completed no later than July 1, 2018; and

3

18.	Submit to urinalysis upon request of the CSO and at his expense.

On June 20, 2018, the State filed a motion to revoke appellant's community supervision, alleging that appellant had violated the above conditions of his community supervision.

At the October 25, 2018 hearing on the State's motion, appellant pleaded true to the State's allegations in its motion. In connection with his plea of true, appellant signed a purported plea-bargaining agreement and a judicial confession in which he admitted to violating the above conditions of his community supervision.[3] The State, at the hearing, informed the trial court that in exchange for appellant's plea of true to the allegations in the State's motion to revoke, it recommended that punishment against appellant be assessed at confinement for two years, with a credit for 137 days served. The State also recommended that appellant only enter his plea of true that day, that his punishment hearing take place on November 1, 2018, and that he be given a personal recognizance bond. The trial court accepted appellant's plea of true and found true the allegations in the State's motion that appellant had violated the above listed conditions of his community supervision. The trial court then told appellant:

> . . . I'm going to give you a [personal recognizance] bond today and let you get out and take care of business, come back, and you will be sentenced on [November 1, 2018].

---

[3]	Copies of appellant's purported plea-bargaining agreement, stipulations, and judicial confession were admitted into evidence at the hearing.

4

> Once again, if you don't show up, the two years is off the table and the Court can still sentence you all the way up to ten years if you don't show up.

Appellant stated that he understood. He then absconded before his punishment hearing on November 1, 2018.

Almost one year later, on October 17, 2019, appellant appeared before the trial court for his punishment hearing. At the beginning of the hearing, the trial court stated:

> The matter before the Court today is to determine punishment or sentencing on [appellant] as his . . . [community supervision] was revoked. . . . He was supposed to return to the [C]ourt as part of the plea[-]bargain[ing] agreement. He failed to appear, so that plea[-bargaining] agreement is no longer in effect. Therefore, the purpose of today's hearing is to determine the punishment for [appellant].

The State also stated at the start of the hearing:

> . . . The State would simply like to say on the record basically what has already been said, which is that on June 16th, 2016, [appellant] was convicted. He received a sentence of 10 years' confinement in the Texas Department of Criminal Justice Institutional Division probated for six years. Subsequently, a motion to revoke his [community supervision] was filed.
>
> On October 25th of 2018, [appellant] pleaded true to the allegations in the motion to revoke. His [community supervision] was revoked and he was supposed to report on November 1st of 2018 for sentencing. [Appellant] failed to appear, absconded for months. As a result, our recommendation is certainly no longer binding. The full range of punishment is now available; and we're here before [the Court] today, . . . so you can take these matters into consideration and assess an appropriate punishment given [appellant's] behavior.

5

Appellant then testified that he had previously entered into an agreement with the State in connection with the State's motion to revoke his community supervision. Appellant pleaded true to every allegation in the State's motion. Appellant stated that although he pleaded true to the allegation in the State's motion that he had committed the offense of possession of a controlled substance, his plea of true was a mistake because he did not want to plead true to that allegation. However, he thought that if he did not plead true then he would be sentenced "to the max." According to appellant, "the case [involving the offense of possession of a controlled substance] was never filed" against him. And although appellant was supposed to appear for a punishment hearing on November 1, 2018, he did not. He "called the day of [his] court date . . . to try to get more time," but he was unable to do so. He then absconded for months.

Appellant also testified that he was not able to pay his court costs, he did not complete his community service hours, and he failed to submit to a narcotics-use test, as alleged in the State's motion to revoke his community supervision. According to appellant, he violated the terms of his community supervision. Appellant stated that he would like for another opportunity to complete his community supervision.[4]

---

[4] The complainant against whom appellant committed the felony offense of forgery of a financial instrument also testified at the punishment hearing.

**Preservation**

In his first issue, appellant argues that the trial court violated his due process rights in revoking his community supervision and assessing his punishment at confinement for eight years[5] because the trial court interjected additional terms into his plea-bargaining agreement when appellant pleaded true to the allegations in the State's motion to revoke. Appellant also argues that the trial court violated his due process rights in revoking his community supervision and assessing his punishment at confinement for eight years because the trial court assessed his punishment at confinement for "a term of years far in excess of the plea[-bargaining] agreement and without giving [a]ppellant the opportunity to withdraw his plea and renegotiate." In his second issue, appellant argues that the State violated his due process rights because it purportedly "demand[ed] that [a]ppellant be sentenced to a number of years far in excess of what was agreed upon" in the plea-bargaining agreement.

To preserve a complaint for appellate review, a defendant must show that he first presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. *See* TEX. R. APP. P. 33.1(a); *see also Ware v. State*, No. 06-19-00181-CR, 2020 WL 610695, at *3 (Tex. App.—Texarkana Feb. 10, 2020, no pet.) (mem. op., not designated for publication) (Texas Rule of

---

[5]    The trial court also assessed a fine of $1,500. Appellant does not appear to complain about the imposition of the fine.

Appellate Procedure 33.1 applies to complaint about plea of true in revocation or adjudication proceeding). The purpose of requiring a specific objection in the trial court is twofold: (1) it informs the trial court of the basis of the objection and gives the trial court the opportunity to rule on it and (2) it gives the State the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). A defendant "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Even a claim involving constitutional error, including a claim that a defendant's due process rights were violated, must be preserved by objection or it is waived. *See Hull v. State*, 67 S.W.3d 215, 216–18 (Tex. Crim. App. 2002); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *see also Juarez v. State*, No. 01-14-01035-CR, 2016 WL 1056952, at *3 (Tex. App.—Houston [1st Dist.] Mar. 17, 2016, pet. ref'd) (mem. op., not designated for publication).

At the October 25, 2018 hearing on the State's motion to revoke appellant's community supervision, the following exchange took place:

| The Court: | . . . Is there a plea[-]bargain[ing] [agreement]? |
| [State]: | There is, Your Honor. |

In exchange for a plea of true to the allegations contained in the motion to revoke [community supervision] before you, the State recommends two years['] confinement in the Institutional Division of the Texas Department of Criminal Justice, with credit for 137 days served, plus all remaining costs.

As we discussed, there is the added stipulation that his sentencing will be next week, and he will simply enter his plea today and be given a [personal recognizance] bond.

The Court:        Right.

. . . .

The Court:        All right. So is that your understanding of the plea[-]bargain[ing] [agreement]?

[Appellant]:        Yes, ma'am.

. . . .

The Court:        All right. I'm going to hand to your attorney what's been marked [as] State's Exhibit 1, the Plea Bargain[ing] [Agreement]; State's 2, the Stipulations; State's 3, the Judicial Confession, and ask you, did you go over each of those documents with your attorney?

[Appellant]:        Yes, ma'am, I did.

The Court:        Did you read and understand each of the documents?

[Appellant]:        Yes, ma'am, I did.

The Court:          Did you sign each of them on all the lines that required your signature?

[Appellant]:        Yes, ma'am, I did.

The Court:          Did you do that freely and voluntarily?

[Appellant]:        Yes, ma'am.

The Court:          Did anybody force you, threaten you, or make you sign them?

[Appellant]:        No, ma'am.

The Court:          And where required, did you swear to each of those documents before one of the deputy district clerks today?

[Appellant]:        Yes, ma'am, I did.

. . . .

The Court:          Then as to the allegations in the State's Motion to Revoke [Community Supervision], how do you wish to plead, true or not true?

[Appellant]:        True.

The Court:          Are you pleading true because the violations are true and for no other reason?

[Appellant]:        Yes, ma'am.

The Court:          The Court is going to accept your plea of true and note your plea of true. I'm going to recess this hearing and we will reset it for sentencing at 9 o'clock next Thursday, November 1, 2018. A new judgment will be prepared and then [the trial court] will sentence you at that time.

10

> So I do accept your plea of true and find the violations to be true, but I'm going to give you a [personal recognizance] bond today and let you get out and take care of business, come back, and you will be sentenced on that day.
>
> Once again, if you don't show up, the two years is off the table and the Court can still sentence you all the way up to ten years if you don't show up.
>
> Do you understand that?

[Appellant]:        Yes, ma'am.

Appellant did not make any objections during the entirety of the trial court's October 25, 2018 hearing on the State's motion to revoke appellant's community supervision. Appellant also did not ask to withdraw his plea of true at any point.

At the October 17, 2019 punishment hearing, the following exchange occurred:

The Court:        The matter before the Court today is to determine punishment or sentencing on [appellant] as his . . . [community supervision] was revoked. . . . He was supposed to return to the [C]ourt as part of the plea[-]bargain[ing] agreement. He failed to appear, so that plea[-bargaining] agreement is no longer in effect. Therefore, the purpose of today's hearing is to determine the punishment for [appellant].

Does the State wish to call a witness?

11

[State]: No, Your Honor. The State would simply like to say on the record basically what has already been said, which is that on June 16th, 2016, [appellant] was convicted. He received a sentence of [ten] years' confinement in the Texas Department of Criminal Justice Institutional Division probated for six years. Subsequently, a motion to revoke his [community supervision] was filed.

On October 25th of 2018, [appellant] pleaded true to the allegations in the motion to revoke. His [community supervision] was revoked and he was supposed to report on November 1st of 2018 for sentencing. [Appellant] failed to appear, absconded for months. As a result, our recommendation is certainly no longer binding. The full range of punishment is now available; and we're here before [the Court] today, . . . so you can take these matters into consideration and assess an appropriate punishment given [appellant's] behavior.

At the conclusion of the punishment hearing, the State made a closing argument to the trial court, stating:

Your Honor, the State's position remains the same. [Appellant's] guilt is not in dispute. It is also not in dispute that [appellant] has violated many terms of his [community supervision]. I think we have established here, as well as in the past, based on his prior pleadings of true to the allegations contained in his motion to revoke [community supervision] that [appellant] was in violation of his [conditions of community supervision] and that his [community supervision] should be revoked.

The many violations of his [conditions of community supervision] indicate he was not a successful probationer and should not be continued on [community supervision]. Moreover, [appellant] didn't even show enough respect for either the Court or his [CSOs] to show

12

up when ordered for sentencing or to so much as report the fact that he had not appeared or for whatever -- for whatever reason to his [CSOs]. He was unheard of for months. He absconded.

Your Honor, the full range of punishment is open to the Court in this case and we ask that the Court assess a punishment that is just and fair but the State asks that the Court take into consideration not only [appellant's] failures while on [community supervision] but the seriousness of his underlying offense, his disrespect to this Court by absconding, and his failure to report and to respect his [CSOs] for months. If he can't do that, Your Honor, he can't be back on [community supervision] and he needs to be sentenced to a period of confinement. Thank you.

Appellant did not make a closing argument to the trial court at the conclusion of his punishment hearing. Appellant also did not make any objections during the entirety of the trial court's October 17, 2019 punishment hearing, and he did not ask to withdraw his plea of true at any point.

In his first issue, appellant argues that the trial court violated his due process rights in revoking his community supervision and assessing his punishment at confinement for eight years because the trial court interjected additional terms into his plea-bargaining agreement and the trial court assessed his punishment at confinement for "a term of years far in excess of the plea[-bargaining] agreement and without giving [a]ppellant the opportunity to withdraw his plea and renegotiate."

13

A defendant forfeits error if he does not object to the trial court's improper participation[6] in the plea-bargaining process. *See Hallmark v. State*, 541 S.W.3d 167, 170 (Tex. Crim. App. 2017); *Torres v. State*, 587 S.W.3d 503, 508 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (complaint court improperly intruded into plea negotiations not preserved for appellate review because defendant never objected to trial court's comments); *see also* TEX. R. APP. P. 33.1(a); *Wimberley v. State*, No. 01-17-00529-CR, 2018 WL 2925697, at *2 (Tex. App.—Houston [1st Dist.] June 12, 2018, no pet.) (mem. op., not designated for publication) ("[E]rrors concerning the trial court's improper intrusion into the plea-bargaining process are subject to Rule 33.1's requirements.").

Further, a defendant forfeits his complaint that the trial court did not allow him to withdraw his plea of true when he did not request to do so. *See Lanum v. State*, 952 S.W.2d 36, 39–40 (Tex. App.—San Antonio 1997, no pet.) (defendant did not preserve complaint trial court did not allow him to withdraw plea of true when it did not follow punishment recommendation); *see also Lewis v. State*, No. 05-12-00682-CR, 2013 WL 4779741, at *3 (Tex. App.—Dallas Sept. 5, 2013, no pet.) (mem. op., not designated for publication); *Barron v. State*, No. 13-00-557-CR,

---

[6]     *See Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009) ("The only proper role of the trial court in the plea-bargain[ing] process is advising the defendant whether it will 'follow or reject' the bargain between the [S]tate and the defendant.").

2001 WL 1002446, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2001, no pet.) (mem. op., not designated for publication) (defendant did not preserve complaint he should have been allowed to withdraw plea of true when trial court did not follow his plea-bargaining agreement with State).

Here, appellant did not object or otherwise raise his complaints that the trial court violated his due process rights by improperly adding terms to his plea-bargaining agreement or that the trial court violated his due process rights by giving him a chance to withdraw his plea of true when it assessed his punishment at eight years' confinement—several years longer than the period of confinement that the State had originally recommended as part of appellant's plea-bargaining agreement. *See, e.g.*, *Wimberley*, 2018 WL 2925697, at *2 (defendant did not preserve complaint trial court violated his right to due process by purportedly participating in plea negotiations); *Lewis*, 2013 WL 4779741, at *3 (defendant did not preserve complaint where she never asked to withdraw her plea).

Appellant asserts that he may raise his complaints for the first time on appeal because the trial court disregarded appellant's fundamental constitutional rights. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). But constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved. *See Anderson v. State*, 301 S.W.3d 276, 279–80 (Tex. Crim. App. 2009); *see also Mendez*, 138

15

S.W.3d at 342 (most complaints "whether constitutional, statutory, or otherwise are forfeited by failure to comply with Rule 33.1(a)" (internal quotations omitted)); *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Texas Rule of Appellate Procedure 33.1's preservation requirements only do not apply "to rights which are waivable only or to absolute systemic requirements," the violation of which may still be raised for the first time on appeal. *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).

The trial court's purported errors in improperly adding terms to appellant's plea-bargaining agreement and in not giving appellant a chance to withdraw his plea of true are not systemic nor waivable only and may not be raised for the first time on appeal. *See Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009) (trial court's purported error in intruding into plea-bargaining process not systemic or waivable-only error and must be preserved); *Mendez*, 138 S.W.3d at 350; *see also Garlow v. State*, No. 05-13-00924-CR, 2014 WL 2743506, at *2 (Tex. App.—Dallas June 16, 2014, no pet.) (mem. op., not designated for publication) (defendant's complaint trial court did not allow her to withdraw her plea of true not preserved where defendant did not ask to withdraw her plea or raise objection; exception for absolute systemic requirements or waivable-only rights did not apply); *Lewis*, 2013 WL 4779741, at *3.

Because appellant did not object or otherwise raise his complaints that the trial court violated his due process rights by improperly adding terms into his plea-bargaining agreement or that the trial court violated his due process rights by not giving him a chance to withdraw his plea of true when it assessed his punishment at confinement for eight years, we hold that he has not preserved these complaints for appellate review. *See* TEX. R. APP. P. 33.1(a).

In his second issue, appellant argues that the State violated his due process rights because it purportedly "demand[ed] [at the punishment hearing] that [a]ppellant be sentenced to a number of years far in excess of what was [previously] agreed upon" in the plea-bargaining agreement.

To preserve a complaint that the State breached a plea-bargaining agreement, a defendant must bring the alleged breach to the trial court's attention with a timely, objection, or motion, and he must seek a ruling on the issue. *See* TEX. R. APP. P. 33.1(a); *Joyner v. State*, 548 S.W.3d 731, 735 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Thus, a defendant can preserve his breach-of-the-plea-agreement complaint by bringing the issue to the trial court's attention as soon as the error can be cured, either by an objection at the time of the breach or by moving for a new trial to compel specific performance of the plea-bargaining agreement. *See Joyner*, 548 S.W.3d at 735; *see also Bitterman v. State*, 180 S.W.3d 139, 144 (Tex. Crim. App. 2005). Complaints related to the noncompliance with a plea-bargaining agreement

17

must be raised in the trial court to preserve them for appellate review. *See Martinez v. State*, 159 S.W.3d 655, 656 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.); *see also Musachia v. State*, No. 13-13-00090-CR, 2014 WL 4049885, at *1–2 (Tex. App.—Corpus Christi–Edinburg Aug. 14, 2014, no pet.) (mem. op., not designated for publication).

Appellant did not object at the October 17, 2019 punishment hearing that the State violated his due process rights by purportedly "demanding that [a]ppellant be sentenced to a number of years far in excess of what was [previously] agreed upon" in the plea-bargaining agreement. Although appellant filed a motion for new trial, he did not raise his complaint in his motion. This Court has held that the State's breach of a plea-bargaining agreement does not constitute a violation of a systemic requirement or a waivable-only right that may be reviewed for the first time on appeal. *See Joyner*, 548 S.W.3d at 736–38. Consistent with this holding, we have specifically held that any alleged error constituting a purported breach of a plea-bargaining agreement must be preserved for appellate review in accordance with Texas Rule of Appellate Procedure 33.1(a). *See id.* at 734–39; *see also Martinez*, 159 S.W.3d at 656 (breach-of-plea-agreement complaint was not preserved for review). Thus, we hold that appellant has not preserved for appellate review his complaint that the State violated his due process rights by purportedly "demanding [at the punishment hearing] that [a]ppellant be sentenced to a number

of years far in excess of what was [previously] agreed upon" in the plea-bargaining agreement.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).